# Parlovich v. The Philadelphia & Reading Coal and Iron Company, Appellant.

*Workmen's Compensation Law—Final receipt—Practice—Setting aside settlement—Injury to eye—Refusal of surgical treatment—Amending Act of June 26, 1919, P. L. 642.*

The Workmen's Compensation Board is not obliged to follow the rules of courts in law and equity in determining whether or not to

set aside a "final receipt." Where such receipt is given and the condition of the claimant changes, the Workmen's Compensation Board may go behind the agreement and consider the case on the merits.

Mere delay for three days in applying for treatment is not a refusal to accept reasonable surgical aid, where the testimony of the employer's surgeon was that the injury might have been no less serious even if it had been treated immediately.

The Amending Act of June 26, 1919, P. L. 642, was not designed to substantially reënact the old law as to contributory negligence nor to deprive an employee of compensation because he did not follow all the directions of all the physicians and surgeons deputed to look after him. Its purpose was to allow a defense by the employer where injury or larger incapacity are entirely the result of unwillingness of the employee to receive treatment.

Argued December 7, 1920.   Appeal, No. 96, Oct. T., 1920, by defendant, from judgment of C. P. Schuylkill County, Sept. T., 1919, No. 323, affirming award of Workmen's Compensation Board for plaintiff in the case of Alex Parlovich v. The Philadelphia and Reading Coal and Iron Company.   Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ.   Affirmed.

Appeal from the Workmen's Compensation Board. Before BECHTEL, P. J.

The facts are stated in the opinion of the Superior Court.

The court affirmed the award of the Workmen's Compensation Board.   Defendant appealed.

*Error assigned* was the decree of the court.

*John F. Whalen,* and with him *George Ellis,* for appellant.

*Roger J. Dever,* for appellee.

OPINION BY HEAD, J., March 5, 1921:

The disposition of this appeal involves the consideration of two questions: (1) Was the injured employee, the appellant, estopped to make any further complaint by the settlement agreement into which he entered with the defendant company, and which was afterwards set aside by the Workmen's Compensation Board? (2) Was the conduct of the complainant after he had sustained the injury, of such character that the employer may now assert it has been relieved from the duty to compensate him for the injury?

1. The complainant suffered an injury to one of his eyes in the course of his employment by the appellee company. He received some compensation as if for a temporary injury during a period of a few weeks. He then signed a settlement agreement and what is called a final receipt. This receipt states his account thus: "For compensation, account of disability, under Workmen's Compensation Act of 1915, viz: 6 5-6 weeks, at $7.96 per week, $54.39." Then follows: "Received Mar. 5, 1918, of Workmen's Compensation Fund of The Philadelphia and Reading Coal and Iron Company $54.39 in full of above account." Signed by the mark of the complainant and duly witnessed. In point of fact it later developed that the complainant's eye was destroyed and his sight entirely gone. He filed a petition with the Workmen's Compensation Board asking that body to review the said agreement as provided in section 423 of the Act of 1915 and alleged as the reason for his application "The compensation agreement was executed by mistake in that it fails to provide for compensation for the loss of my eye which I am entitled to for the injury in question, as my right eye is blind as result of the injury. And in support of the above allegations I state the following facts: The defendant paid me $7.31 per week, for 6 weeks and 5 days, when I was asked to sign a paper, showing I had been paid for 6 weeks and 5 days. I cannot read English and signed the paper they offered me,

which I understood was for 6 weeks and 5 days compensation, I did not know it was a receipt for all compensation due me."

Section 434 of the Act of 26th of June, 1919, provides, inter alia, "That the board,......may, at any time, set aside a final receipt, upon petition filed with the board, if it be proved that such receipt was procured by fraud, coercion, or other improper conduct of a party or is founded upon mistake of law or of fact." Notice was given of the filing of this petition and the employer company answered. The Workmen's Compensation Board, exercising the powers conferred by the provision of the statute we have just quoted, set aside the agreement and considered the case of the complainant as if such agreement had never been executed. This action of the board is assigned for error.

When we take a broad view of the objects and purposes of the legislature in enacting the legislation that now controls the relation of employer and employee, and the procedure by which the Workmen's Compensation Board is to put into effect the reasons for its creation, we are wholly unwilling to say that, in disposing of the question raised by the petition and answer, the board was obliged to follow the rules prevailing in courts of law and equity to the effect that, one who seeks to set aside a writing executed by himself, must produce the testimony of two witnesses or of one witness with collateral circumstances equivalent to the evidence of another. The answer of the employer contains but a simple denial in so many words of the facts set forth in the petition. It does not deny the allegation that the complainant was unable to speak or read the English language. It does not aver the agreement was read and explained to him. The record shows his testimony was taken with the aid of an interpreter. In this state of the record it might not be going too far to say that the petitioner had made out a case that would warrant a decree by a chancellor setting aside the agreement, but

it is not necessary to go so far.   We content ourselves with the statement that in our judgment the 'Workmen's Compensation Board cannot be convicted of reversible error because of its determination to go behind the agreement and receipt and consider the case of the complainant on its merits.

2. The major effort of the appellee company was to show that the complainant had lost his right to compensation because of his wilful refusal to accept proper surgical aid and to comply with the directions of the surgeons who proffered such aid.   In considering this question it may not be amiss to dwell for a moment on the radical changes effected by recent legislation and the broad reasons underlying it.   By the Act of June 2, 1915, P. L. 736, the legislature declared, in section 201 of article II, "That in any action brought to recover damages for personal injury to an employee in the course of his employment,......it shall not be a defense......that the injury was caused in any degree by the negligence of such employee, unless it be established that the injury was caused by such employee's intoxication or by his reckless indifference to danger.   The burden of proving such intoxication or reckless indifference to danger shall be upon the defendant, and the question shall be one of fact to be determined by the jury."   We are now immediately concerned with the Amending Act of 26th of June, 1919, P. L. 642 (which in this respect did not change the original act) declaring that "If the employee shall refuse reasonable surgical, medical and hospital services, etc., tendered to him by his employer, he shall forfeit all right to compensation for any injury or any increase in his incapacity shown to have resulted from such refusal."   It was not the legislative purpose by this provision to substantially reënact the old law as to the contributory negligence of an employee.   Nor was it intended to deprive an injured employee of any compensation because he did not follow all of the directions of all of the physicians or surgeons who may have

been deputed to look after his welfare. The employer company is given an opportunity to make a defense under the provision of the statute quoted. That opportunity is coupled with the obligation on the employer company to show that the injury was entirely the result of the unwillingness of the employee to receive treatment or that such conduct on his part resulted in a larger incapacity than would have been the probable and reasonable result of the original injury.

Now it is clear enough from the evidence that the complainant received a serious injury to his eye in the course of his employment. He declares in his testimony "I did not have a doctor immediately. because I did not have time, because my wife just come from the hospital, had her leg broken." He did go to a doctor on the third day, who sent him to a hospital. He remained in that hospital five days. Then he went to the Pottsville hospital where he remained five weeks under the care of the chief eye surgeon of the employer company. At the expiration of that time he testifies that surgeon gave him a note to go home. "I asked him for a note, and he gave me a note to go home......I asked him whether he going to cure me and he said you can come two times a week or one times a week."

Now if the burden of proof be upon the employer company to show that the loss of appellant's eye was traceable to his refusal to follow reasonable medical or surgical advice, then we have to say the record is entirely barren of any such proof. The chief surgeon of the employer company was asked this question: "You cannot say, as a practicing physician, specialist in eye work, that this man's eye would not have been lost for practical purposes, as the result of this injury, even if he had received treatment immediately, can you?" The answer was: "No, sir, you cannot, because some eyes will go right to the bad for you from the beginning, but the majority of them get well." Upon testimony no stronger than that, we are not willing to say that the referee, the

Opinion of the Court. [76 Pa. Superior Ct.

Workmen's Compensation Board and the court of common pleas all fell into error. It appears to us on the contrary that the safe and sound conclusion to be reached by a study of this record is that the employer company, seeking to defend against this claim, was unable to show that the loss of the complainant's eye resulted from his refusal to accept reasonable surgical aid.

We are all of the opinion, therefore, that the assignments of error must be overruled. The appeal is dismissed at the cost of the appellant.