Phillips, Appellant, *v.* Coxe Brothers & Company, Inc.

186

Argued March 6, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Roger J. Dever,* for appellant.

*John H. Bigelow,* for appellee.

OPINION BY KELLER, P. J., April 12, 1939:

The appellant, claimant, was injured on January 13, 1937 in the course of his employment with the defendant. A compensation agreement was entered into on February 13, 1937 in which, by agreement of the parties,

the accident was described as follows: "While nailing plank to make a platform, a piece of coal slipped thru between the laggings and struck him [the claimant] on the back of neck, causing two deep lacerations on the back of neck on right side." It provided for the payment of compensation for total disability at the rate of $15 per week, from January 20, 1937 to January 24, 1937 inclusive, $10.71, and all medical and hospital expenses due under the provisions of the Workmen's Compensation Law. Claimant returned to work on January 25, 1937 at the same wages as before the accident. The agreement was stamped 'approved' by the Bureau of Workmen's Compensation on February 24, 1937.

At the same time the agreement was signed claimant was given a check for $10.71 and signed a final receipt, dated February 13, 1937, in the following form:

"Bureau File No. 3369566
"Final Settlement Receipt—Employer's Claim No. 20-37-Der. Check No. 1067.

"Deringer, Pa., 2-13 1937.

"Received of Coxe Brothers & Co., Inc. the sum of $10.71 being the final payment of compensation for all injuries including any and all disfigurement received by me on or about Jan. 13, 1937 while in the employ of Coxe Brothers & Co., Inc. making, with the payments heretofore received by me, the total of $10.71 covering a period of 5/7 weeks. My disability began on Jan. 13, 1937 and I was able to return to work on Jan. 25, 1937 without any loss of earning power due to aforesaid injuries. This receipt is subject to approval of the workmen's compensation bureau and subject to review by the workmen's compensation board. Amount expended for medical, etc. $———.

*Emery Phillips*
Fern Glen, Pa.

*Roy Derr*
Witness

This receipt must be signed by the payee before presenting this voucher for payment."

The following perforation appears on the receipt:

P A I D
2-24-37

Stamped on the back is the following:

> Received
> Mar. 4 1937
> Bureau of Workmen's
> Compensation

The receipt had evidently been attached to a voucher check for the money covered by it, and the perforation represented the date on which the check and attached receipt had been presented to the bank for payment and had been paid.

On March 4, 1937 claimant filed a petition to set aside the final receipt for the reason: "That I was paid compensation, but am entitled to additional compensation for disfigurement."

The employer filed an answer denying claimant's right to additional compensation.

At the hearing before the referee claimant admitted signing the foregoing final receipt, that he had attended the public schools and can read and write.

To his counsel's question, "Was there any talk at that time about your disfigurement?" his only reply was, "I thought that didn't have anything to do with disfigurement, that is why I signed. I needed the money because I lost time from my injury."

A physician testified that the accident had left three bluish disfiguring scars on claimant's neck: one approximately an inch and a half from the right lobe of the right ear extending downward on the neck in a diagonal line approximately an inch; another, on the same diagonal line, approximately two inches long extending downward on the right side of the neck from the hair line toward the angle of the jaw; and a third,

on the right side of the neck about an inch from the center, from the middle on a horizontal plane, approximately an inch long.

The referee disallowed the additional claim, (1) because the final receipt had not been signed by mistake, and included compensation for disfigurement, if any; (2) because the scars on the back of claimant's neck, did not, by reason of their location, cause an unsightly appearance.

On appeal to the board, the findings of the referee were set aside as to (1) that the claimant had not signed the final receipt by any mistake, or by fraud or duress; and (2) that the scars on the back of the neck, although permanent, were not of such a character as to produce an unsightly appearance; and instead thereof found that the claimant signed the final receipt by mistake, and that the scars are of such a character as to produce an unsightly appearance. Accordingly the board set aside the final receipt and awarded claimant compensation for disfigurement for eight weeks at $15 a week, or $120, on which defendant was entitled to a credit for $10.71 paid claimant.

Defendant appealed to the court of common pleas, which reversed the board and set aside the award on the ground that the evidence failed to support a finding that the final receipt had been executed by the claimant by reason of a mistake of fact, and entered judgment for the defendant.

We are in accord with Judge VALENTINE's decision on the question of mistake of fact. He pointed out that as the injury to the claimant consisted of "deep lacerations of back of neck on the right side," the agreement of compensation might properly have covered disfigurement compensable under section 306(c) of the Workmen's Compensation Act, as amended by Act of May 20, 1921, P. L. 966; for while, strictly speaking, the neck is that part of the body which connects the head with the trunk, it is in such close relation to the head

that if the injury to the neck gives the head an unsightly appearance, a liberal construction of the Act, giving effect to the purpose of the amendment, would make it compensable. But as the Act provides no definite period of compensation for disfigurement, the parties may agree as to the compensable period, and if it does not exceed the period of actual disability compensable under the agreement, no additional compensation will be payable, for compensation payments under section 306(c) run concurrently with payments under sections 306(a) and (b): *Olinsky v. Lehigh Valley Coal Co.,* 93 Pa. Superior Ct. 221; *Helitski v. Glen Alden Coal Co.,* 93 Pa. Superior Ct. 225; *Madajewski v. Susquehanna Collieries Co.,* 135 Pa. Superior Ct. 181, 4 A. 2d 809, Judge VALENTINE also said: "Claimant is thirty-three years of age, attended the public schools, is able to read and write and understands the English language thoroughly. His failure to read the receipt prior to its execution would deprive him of relief in a court of law or equity, *Greenfield's Estate,* 14 Pa. 489-96; *Bosler v. Sun Oil Co.,* 325 Pa. 411-21; *Ponevyezh B. & L. v. Shandelman,* 111 Pa. Superior Ct. 423-27, but the Workmen's Compensation Board is not obliged to follow the rules of courts of law or equity in determining whether or not to set aside a final receipt, *Parlovich v. Phila. & R. C. & I. Co.,* 76 Pa. Superior Ct. 86, and in determining such question may properly consider the case upon its merits. However, an order setting aside a final receipt must be based upon sufficient evidence. The evidence must be more than a mere scintilla. *Shuler v. Midvalley Coal Co.,* 296 Pa. 503. It must be of such a quality as to make it certain to the trier of the fact that the mistake existed, or improper conduct occurred. *Lowdermilk v. Lorah,* 124 Pa. Superior Ct. 356. The sole evidence in the record is claimant's statement that he thought that the receipt 'didn't have anything to do with disfigurement.' There was no testimony indicat-

ing that the parties had not discussed the question of disfigurement and contemplated that it was to be covered by the receipt; neither was there any testimony as to how the amount paid claimant had been arrived at. It was not necessary that the amount received by him for disfigurement should be segregated from the amount paid because of the disability he sustained. Nor can the receipt be set aside upon the theory that the allowance for disfigurement should have been greater. Had claimant exercised the slightest care and looked at the receipt he could not have avoided seeing that it covered compensation for disfigurement. We are not here dealing with an illiterate person as in *Nigbrowich v. State Work. Ins. Fund,* 131 Pa. Superior Ct. 532. Claimant had attended the public schools, can read and write and understands the English language thoroughly. He fully realized that he was signing a final receipt. There was no fraud or duress and the record contains no sufficient evidence to warrant the finding that the receipt had been signed by reason of a mistake of fact."

An examination of the opinion of the board, however, discloses that it did not specifically find that the claimant signed the receipt by mistake of *fact;* it announced that it followed its prior decision in *Rava v. Core Brothers,* and found that "claimant had signed the final receipt by mistake." By referring to the board's opinion in the Rava case, (not reported), we find that, in that case, under somewhat similar circumstances, the board decided that the receipt had been signed under a *mistake of law,* because the *compensation agreement* had made no specific reference to disfigurement, and while the final receipt had contained the statement that the payment included "any and all disfigurement," the phrase "including any and all disfigurement" had been added to the form of final receipt prepared by the board.

We cannot agree with the board that this constituted a mistake of law.

As before pointed out, if the injury described in the compensation agreement is of such a nature that disfigurement of the face or head is likely to result, it is not absolutely necessary that specific reference to such disfigurement should be made in the agreement. It may be considered and allowed for by supplemental agreement, or in the final receipt under the original agreement, if there is no advantage taken of the claimant, no concealment or sharp practice amounting to fraud, on the part of the employer, and no mistake of fact by the employee in signing the receipt; for, as we have already said, payments for disfigurement run concurrently with compensation payments for disability, and are not in addition thereto, except in so far as the compensation for disfigurement exceeds the payments for disability; and the parties may agree as to the extent of, and compensation for, such disfigurement and are bound thereby except in case of fraud, duress or mistake.

There is no provision in the Workmen's Compensation Act that the parties may not make reasonable changes in, or additions to, the forms prepared or furnished by the board, to meet the circumstances of the particular case. While the Act of June 26, 1919, P. L. 642, sec. 6, does provide that "all *petitions* shall be in writing and in the form prescribed by the board," that does not include compensation agreements or final receipts; and, even as to petitions, it does not require a rigid compliance with or absolute duplication of the form prescribed, without any variations or additions to meet special circumstances. Nor does the provision in section 16 of the Act of July 21, 1919, P. L. 1077, that "it shall be the duty of the board to make all proper and necessary rules and regulations for the legal and judicial procedure of the bureau, and to promptly hear and determine all petitions and appeals and to

perform such other duties as shall be required," justify any such construction.[1] The requirements that all compensation agreements,[2] final receipts,[3] etc. shall be approved by the board before they become effective, furnish all the protection necessary for the employee.

Furthermore, if the forms of the compensation agreements, final receipts, etc., which have come before us, have been prepared and furnished by the Workmen's Compensation Board, we are of opinion that they should be revised, simplified and classified. As we pointed out in *Priorello v. State Workmen's Ins. Fund,* 133 Pa. Superior Ct. 373, 374, 2 A. 2d 864, the form of agreement used in that case was so general and all inclusive in its terms—apparently drawn so as to cover and apply to every possible form of injury whether under section 306(a), (b) or (c), and whether the employment was seasonal or continuous—that it was inconsistent and contradictory in its provisions, unless the inapplicable provisions were crossed out or eliminated from it. Certainly there can be no objection to the use of forms which, while substantially following applicable provisions of the forms prepared by the board, omit inapplicable provisions or supply special matters not covered by the board's form, provided such form is acceptable to and approved by the board. In our opinion, there was in this case no mistake of law which justified the setting aside of the final receipt.

---

[1] Section 17 of the Act of July 21, 1919, P. L. 1077, which empowered the Commissioner of Labor and Industry—now the Secretary of Labor and Industry—to authorize the Bureau of Workmen's Compensation to publish and distribute such blank forms, etc. as in the opinion of the board will be useful in the administration of the workmen's compensation law, was repealed by Act of June 7, 1923, P. L. 498, p. 675, without a re-enactment of its provisions in the sections dealing with workmen's compensation (sec. 1078, at p. 585).

[2] See amendment to Workmen's Compensation Law of June 26, 1919, P. L. 642, p. 660, amending sec. 409, 77 PS sec. 733.

[3] See Act of June 4, 1937, P. L. 1552, sec. 1, 77 PS sec. 1001.

The assignments of error are overruled and the judgment of the court below is affirmed.